**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**PATSY CREWS**                                                                                          **PLAINTIFF**

**v.**                               **CASE NO. 3:04-CV-310 GTE**

**THE PRUDENTIAL INSURANCE**
**COMPANY OF AMERICA**                                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Presently before the Court are Cross-Motions for Summary Judgment. The Defendant's Motion will be granted and the Plaintiff's Motion will be denied. Judgment will be entered in favor of the Defendant.

**I. Background**

Plaintiff began employment as a general factory worker for American Greetings Corporation in Osceola, Arkansas on April 29, 1991. Plaintiff left work on February 15, 2001 after diagnoses of osteoarthritis in her right hand and subacromial bursitis. She attempted to return to work on March 31, 2001, but was unable to continue and last worked on April 5, 2001. Effective October 3, 2001, Defendant approved Plaintiff' application for long-term disability benefits with the following condition:

> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(AR0091). By letter dated July 8, 2003, Defendant terminated Plaintiff's long-term disability benefits, after determining that Plaintiff was not "disabled" because she was capable of sedentary

work.[1] (AR0293). The letter listed the following positions as appropriate for Defendant's education, training, and experience: Document Preparer, Microfilming; Assembler, Semiconductor; Order Clerk, Food and Beverage; and Bonder, Semiconductor.

On reconsideration, Prudential upheld its decision to terminate benefits in a letter dated August 21, 2003. (AR0606). Defendant states that it spoke with two of Plaintiff's treating physicians, Dr. Brandt and Dr. Roberts, who both advised that Plaintiff was capable of certain types of occupations , such as Call Out Operator and Surveillance-System Monitor.[2]

Plaintiff appealed a second time and provided Prudential with a vocational report that concluded she was totally unemployable. Plaintiff also submitted medical reports citing to psychiatric illnesses. By letter dated June 24, 2004, Defendant declined to change its position. Prudential reiterated many of the points highlighted in its earlier letters. Defendant references Dr. Roberts' files which reflect that Plaintiff's condition was essentially unchanged from 1999 to 2004. Prudential, having concluded that any medical maladies suffered by Plaintiff did not amount to a disability, repeated its belief that Plaintiff's conditions did not prevent her from working in a reasonably suitable sedentary occupation.

On July 28, 2004, Plaintiff filed a complaint in the Circuit Court of Craighead County, Arkansas against Prudential Insurance Company of America. Defendant removed the action to this Court on the ground that ERISA preempted Plaintiff's alleged state law claims.

---

[1] Defendant described sedentary work as "exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body." (AR0293).

[2] The letter indicates that Dr. Bryant gave a more general statement that Plaintiff was capable of sedentary work, while Dr. Roberts assented that Plaintiff would be capable of work required by the two mentioned occupations.

**II. Summary Judgment Standard**

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party is not required

to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III. Discussion

District courts review an ERISA plan administrator's decision to terminate benefits *de novo*, unless the benefits plan vests the administrator with the discretionary authority to determine benefits eligibility or to interpret the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957-58 (1989). Where the plan administrator has such discretionary powers, courts review a denial-of-benefits claim with a deferential eye, overturning the administrator's decision only if it was "arbitrary and capricious". *See*, *e.g.*, *Lickteig v. Business Men's Assur. Co. of America*, 61 F.3d 579, 583 (8th Cir. 1995).

Here, the parties are in agreement that the Plan at issue grants Defendant the discretionary authority to make benefits determinations and to interpret the terms of the policy. The policy appears to support the parties' position, as it states that Prudential has the discretion to determine whether an individual is considered "disabled" or otherwise entitled to long-term disability benefits.

Accordingly, the Court will may overturn Prudential's decision only if it was "arbitrary and capricious".

The "arbitrary and capricious" standard examines "whether the decision to deny [] benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit Court emphasized that "[p]rovided the decision 'is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.'" *Id.* (*quoting Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)).

Prudential provides long-term disability benefits to those covered individuals who meet the following definition of "disability":

> you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury***; and
>
> you have a 20% or more loss in your ***indexed monthly earnings*** due to that ***sickness*** or ***injury***.

(AR0011) (emphasis in original). The policy changes the definition of "disability" after twenty-four months of coverage benefits:

> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any ***gainful occupation*** for which you are reasonably fitted by education, training or experience.

(AR0011) (emphasis in original). To clarify this definition of disability, the policy offers the following definitions:

> ***Gainful occupation*** means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 50% of your indexed monthly earnings within 12 months of your return to work. But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be

> expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.
>
> *Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.
>
> *Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.
>
> *Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lessor of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

(AR0012-13) (emphasis in original).

Prudential denied continued long-term benefits to Plaintiff based upon its conclusion that she was capable of sedentary work. Defendant came to this conclusion based upon the medical records provided by Plaintiff's attending physicians, Dr. Brandt and Dr. Roberts.

Dr. Roberts noted, on a Functional Capacities Form dated June 7, 2002, the following restrictions and limitations: Plaintiff may sit continuously for four hours and for eight hours total with rest; stand continuously for one hour and for four hours total with rest; walk for zero hours continuously and for two hours total with rest; occasionally lift ten pounds; occasionally carry ten pounds; occasionally bend, but never squat, crawl, or climb; frequently reach above shoulder level; no grasping, pushing, pulling, or fine manipulating; and no use of feet for repetitive movements. Dr. Roberts also indicated that arthritis and bad balance should limit Plaintiff's exposure to unprotected heights, moving machinery, marked changes in temperature and humidity, and dust, fumes and gases, but that Plaintiff had no restrictions on driving automotive equipment. (AR0533-534). On August

18, 2003, Dr. Roberts informed Prudential that Plaintiff "should be able to manage" the occupations of Credit Checker or Gaming Surveillance Officer/Gaming Investigator. (AR0285-286).

Dr. Brandt's notes, dated June 26, 2002, describe Plaintiff's conditions as follows:

> [Ms. Crews] walks with an antalgic gait on the right. She lacks 10 degrees of full extension. She has flexion to 120, flexion to 130 on the left and full extension. Stable ligamentous exam. Tender along the medial and lateral joint lines. Distally the pulses are 1+, normal sensation. Hips have a full [range-of-motion]. Upper extremeties are benign, neurovascularly intact.
>
> X-rays are taken. There are some mild degenerative changes noted on the right.
>
> IMPRESSION:
> 1. Right knee internal derangement.
> 2. Fibromyalgia.
> 3. RA.[3]

(AR0376). Dr. Brandt recommended that Plaintiff continue with anti-inflammatory medication and physical therapy.

On a follow-up visit three weeks later, Dr. Brandt observed that Plaintiff "has continued to have syptomatic improvement with therapy and her medications. At present, though her complaints are very mechanical symptoms of painful popping, catching and locking sensations." (AR0374). On August 26, 2002, Dr. Brandt performed arthroscopic surgery on Plaintiff's right knee. (AR0373). On October 10, 2002, Dr. Brandt noted that Plaintiff lacked five degrees of full extension and that her motion had improved. (AR0370). Dr. Brandt completed a "Work Status" form for Prudential in which he marked that Plaintiff was capable of "Light" activity, described as lifting twenty pounds maximum and significant walking or pushing/pulling.[4] (AR0518). The only other restriction noted

---

[3] Rheumatoid arthritis.

[4] "Light" activity is listed as more than "Sedentary" but less than "Medium" activity.

was "Minimize squatting/bending".

Leslie Buck, CRC conducted an employability assessment for Prudential on June 25, 2003. This report indicated that Plaintiff was capable of sedentary occupations such as document preparer, assembler, order clerk or bonder. Ms. Buck conducted a second assessment on August 11, 2003, and invalidated the determinations of the first, stating that the three listed occupations required frequent reaching, handling, and/or fingering which were beyond Plaintiff's physical capabilities. The second assessment identified three occupations which required minimal on-the-job training and that may permit self-accommodation of Plaintiff's limitations: surveillance system monitor; credit information clerk; and gate guard. (AR0563).

The Court concludes that Prudential's determination is supported by substantial evidence and was not "arbitrary and capricious". That is, the administrative record contains more than a scintilla of evidence to support Prudential's conclusion that Plaintiff was capable of some type of work that would earn at least 60% of her indexed monthly earnings. For example, the duties of a Call-Out Operator, Surveillance-System Monitor, and Gaming Surveillance Officers appear within Plaintiff's capabilities. The requirements of a Call-Out Operator[5] largely involve speaking on the telephone and filling out forms. A Surveillance-System Operator must observe close-circuit television monitors and telephone police of disturbances.[6] A Gaming Surveillance Officer is responsible for observing hotel

---

[5] The occupational description for a Call-Out Operator is: "Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber." (AR0285).

[6] The duties of a Surveillance-System Operator are as follows: "Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action. Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to

- 8 -

and casino operations for cheating or theft and reporting problems to a supervisor.[7] These positions, as described, have limited physical demands and appear to allow for flexibility in terms of sitting, standing, and walking. Based upon the restrictions and limitations placed on Plaintiff by her physicians, it appears there is substantial evidence to find that Plaintiff is capable of working in certain occupations such as the aforementioned. Accordingly, the Court must uphold Prudential's decision.

Plaintiff's summary judgment motion argues that clinical reports prepared by three of Prudential's consultants are deficient and reliance on these reports underpins Prudential's "dubious" rationale. Specifically, Plaintiff challenges the medical reports prepared by Jill Fallon, M.D. and Mary Ann DeSantis, RN, and the vocational rehabilitation reports prepared by Leslie Buck, CRC, claiming these reports failed to consider certain aspects of Plaintiff's medical condition.

Dr. Fallon's report is allegedly deficient because she ignored: (i) the impact of fibromyalgia on Plaintiff's ability to work; (ii) the impact of Plaintiff's medications on functional abilities; and (iii) Plaintiff's psychological complaints. Dr. Fallon reviewed Dr. Robert's notes dated from May 28, 1999 to April 23, 2004. Her report summarizes the panorama of symptoms that Dr. Roberts observed as well as the medications prescribed, but it does not touch upon Plaintiff's psychiatric

---

maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions." (AR0286).

[7] "Act as oversight and security agent for management and customers. Observe casino or casino hotel operations for irregular activities such as cheating or theft by either employees or patrons. May utilize one-way mirrors above the casino floor, cashier's cage, and from desk. Use of audio/video equipment is also common to observe operation of the business. Usually required to provide verbal and written reports of all violations and suspicious behavior to supervisor." (AR0286).

condition. It appears that Dr. Fallon submitted a thorough review of Dr. Roberts' diagnoses and conclusions based upon the medical files he submitted to Defendant.

Plaintiff challenges the evaluation submitted by Nurse DeSantis, for failing to consider certain conditions affecting Plaintiff's hips, feet, and shoulders. It appears that Plaintiff is misreading this report. Nurse DeSantis submitted a short evaluation listing only Plaintiff's complaints with respect to pain in her hand, knee, and back,[8] concluding that these complaints do not amount to an impairment and that "[c]hronic knee problems would not prevent performance of sed gainful occ." (PC-PRU-0558). This report does omit considerations of other medical issues, but considering the brevity of this report and the language contained therein, it appears that Nurse DeSantis limited her analysis to the level of impairment Plaintiff suffered from the three physical maladies mentioned: pain in the knee, back, and hand.

Finally, Plaintiff disputes the vocational assessments made by Leslie Buck CRC, essentially arguing that Ms. Buck's second assessment should be disregarded because her first assessment was founded on incorrect information. Ms. Bucks' initial report determined Plaintiff was capable of sedentary work and identified several occupations that required repetitive use of hands. However, her second report stated that "the previously identified occupations are no longer valid as they require frequent reaching, handling, and/or fingering." (PC-PRU-0563). There mere fact that Ms. Buck issued an invalid report is no grounds for finding her subsequent reports invalid as well.

The Court finds Plaintiff's challenges of the aforementioned reports to be unpersuasive and insufficient support for finding that Defendant's denial was "arbitrary and capricious". Plaintiff does not meet her burden under this standard by pointing out flaws in specific reports without showing that the remainder of the administrative record lacked substantial support for Defendant's

---

[8] This report also mentioned an injection Plaintiff received for hip bursitis, breast cancer surgery, and a hysterectomy procedure.

determination. Assuming these three reports are deficient, the Court cannot discard the plan administrator's determination on that ground alone. The administrative record contains numerous medical and vocational reports from doctors and individuals that support Defendant's position that Plaintiff is capable of sedentary work. While the record also reflects determinations by physicians and a vocational expert that Plaintiff is unable to work, such conflicting evidence does not render Defendant's decision "arbitrary and capricious".

The Court will not disturb Prudential's determination as it is supported by substantial evidence. Courts should not "disturb a decision supported by a reasonable explanation 'even though a different reasonable interpretation could have been made.'" *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 828 (8th Cir. 2001) ("[Plan administrator's] decision 'will be deemed reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.'"). Accordingly, the Court concludes that summary judgment in favor of Defendant is appropriate here.

IT IS THEREFORE ORDERED THAT the Plaintiff's Motion for Summary Judgment (Dkt. #12) shall be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT the Defendant's Motion for Summary Judgment (Dkt. #8) shall be, and it is hereby, GRANTED.

Dated this 6th day of September, 2005.

_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE